UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **DARRIUS JENKINS,** )<br>)<br>   **Plaintiff,** )<br>)<br>vs. )<br>)<br>**CAROLYN W. COLVIN, Acting** )<br>**Commissioner of the Social Security** )<br>**Administration,** )<br>)<br>   **Defendant.** ) | Cause No.  1:15-cv-344-WTL-MJD |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Darrius Jenkins requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"), discontinuing the Supplemental Security Income Benefits ("SSI") he received as a child. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I. APPLICABLE STANDARD

Section 1614(a)(3)(H) of the Social Security Act ("the Act") provides that individuals who receive SSI as children must have their disability redetermined upon attaining the age of eighteen. The disability rules used for adults apply to this determination.

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous

work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. ' 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. ' 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. ' 416.920(a)(4)(iii). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. ' 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. ' 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to

address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## II. BACKGROUND

Darrius Jenkins received SSI as a child due to his disability; on August 29, 2011, he attained the age of eighteen. On January 3, 2012, it was determined that Jenkins was not disabled under the rules for adults who file new applications. Jenkins requested and received a hearing before an Administrative Law Judge ("ALJ"). The hearing, during which Jenkins was not represented by counsel, was held on March 6, 2013.[1] ALJ Mark C. Ziercher issued his decision on May 30, 2013, finding that Jenkins' disability ended on January 3, 2012. After the Appeals Council denied review of the ALJ's decision, Jenkins filed this timely appeal.

## III. THE ALJ'S DECISION

As noted above, Jenkins received SSI as a child; upon attaining the age of eighteen, redetermination of his disability found that he was no longer disabled as of January 3, 2012. At steps two and three, the ALJ concluded that since January 3, 2012, Jenkins had the severe impairments of "borderline intellectual functioning, attention deficit disorder (ADHD), and a major depressive disorder (20 CFR 416.920(c))," Record at 19, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Jenkins had

> the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: he can understand, remember, and perform simple work tasks at GED Reasoning Level 02 (as defined in the Selected Characteristics of Occupations) and can perform productive work tasks for up to an average of 98 to 100% of

---

[1] The Court notes that the ALJ properly advised Jenkins of his right to counsel. Jenkins is represented by counsel in the current matter.

3

> an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. He can perform goal-oriented rather than production-oriented work. He can have inconsequential or superficial contact with the general public (i.e. no sustained conversations, e.g., ticket taker). He can perform work that involves routine and repetitive tasks (i.e., no more than frequent changes in core work duties on a weekly basis).

*Id.* at 22. The ALJ found that Jenkins had no past relevant work, but at step five, considering Jenkins' age, education, work experience, and RFC, the ALJ determined that Jenkins could perform a range of work that exists in the national economy, namely as hand packager, laundry worker, office cleaner, baker helper, and table worker. Accordingly, the ALJ concluded that Jenkins' disability ended on January 3, 2012, and that he had not become disabled again since that date.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Jenkins' brief (Dkt. No. 15) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In his brief in support of his complaint, Jenkins argues that the ALJ's decision is not supported by substantial evidence. Specifically, he argues that (1) the ALJ failed to properly consider Jenkins' psychological condition pursuant to Listing 12.05; or, in the alternative, (2) the ALJ's findings are legally and factually insufficient to support his decision.

### A. Listing 12.05

Jenkins argues that the ALJ erred in his Listing finding by failing even to mention Listing 12.05. The Seventh Circuit has cautioned that an ALJ should, at step three, cite the specific Listings he is considering, *see, e.g.*, *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (reversing in part because the ALJ failed to discuss or reference a Listing); *Barnett v. Barnhart*,

4

381 F.3d 664, 668 (7th Cir. 2004) (noting that "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing"), although the ALJ's failure to do so does not require an automatic reversal. *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004). Only where the record contains evidence that reasonably raises the question of whether a particular listing applies and the ALJ has failed to answer that question is remand required. *Id*.

Jenkins argues that there is evidence that suggests that he meets or medically equals Listing 12.05. The requirements are as follows:

> 12.05 Intellectual disability[2]: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

---

[2] At the time of the ALJ's Decision, Listing 12.05 referred to "mental retardation." However, as of September 3, 2013, when the case was pending before the Appeals Council, the Agency replaced the term "mental retardation" with "intellectual disability," due to the negative connotations and offensive nature of the term "retardation." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499, 46499–46500 (Aug. 1, 2013). The Agency also noted that the term "mental retardation" often results in misunderstandings about the nature of the disorder and those who have it. *Id*. This change, however, did not alter the factors necessary to prove disability under Listing 12.05.

> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. 404 Subpt. P, App. 1 § 12.05.

Jenkins points to evidence that suggests that his condition might have met or equaled Listing 12.05. Specifically, he points to IQ scores, including a verbal comprehension score of 68 and full scale IQ of 71, and other evidence in the record that demonstrates that he has subaverage intellectual functioning. He received only a certification of completion from high school, and he was placed in the learning disability program at school. He also pointed to deficits revealed during a consultative examination, including inability to perform simple mathematical computations and difficulties with judgment, insight, proverbs, and information testing. Jenkins also presented evidence of adaptive skill limitations, including the fact that his grandmother needs to remind him about personal care and grooming and help and encourage him with basic household chores. Jenkins' only job experience was sheltered employment through the school system. Further, the SSA had determined that Jenkins needed someone to help manage his benefits. The ALJ acknowledged that Jenkins' borderline intellectual functioning, ADHD, and major depressive disorder were severe impairments.

Based on the above analysis, the ALJ's step three finding was deficient. Jenkins met his burden of submitting evidence that reasonably raises the question of whether Listing 12.05 applies, and the ALJ was accordingly obligated to analyze that Listing. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("[A]n ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a

remand."). Here, the ALJ offered no analysis of Listing 12.05 whatsoever. Remand is therefore required for the ALJ to properly assess whether Jenkins' symptoms meet or equal Listing 12.05.

### B. Listing 12.04

On remand, the ALJ also should reexamine his finding with regard to Listing 12.04. Specifically, the ALJ should consider the report of Jennifer Query, Jenkins' English teacher at Lawrence Central High School. He should also address the evidence about Jenkins' violent tendencies and propensity for outbursts.

### VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 3/4/16

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic communication.